UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal No. 15-34-ART |
| v. | ) | |
| | ) | |
| ANTOINE DUDLEY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

After two days of trial, Antoine Dudley pled guilty.  Four days after that, he moved to withdraw his plea.  Having not yet sentenced him, the Court may grant Dudley's request if he shows a "fair and just reason" for making it.  Fed. R. Crim. P. 11(d)(2)(B).  But Dudley fails to do so.  The Court must therefore deny his motion.

I.

The government accused Antoine Dudley of selling drugs, conspiring to sell drugs, and selling a dose of fentanyl that caused a serious bodily injury.  R. 79.  Dudley decided to take on those allegations at trial.  With three prior felony drug convictions, Dudley faced a mandatory life sentence if the jury convicted him of causing a serious bodily injury.  *See* R. 4 (listing Dudley's prior convictions); 21 U.S.C. § 841(b)(1)(C) ("If any person [distributes a controlled substance] after a prior conviction for a felony drug offense has become final . . . and if death or serious bodily injury results from the use of such substance [he] shall be sentenced to life imprisonment[.]").

For two days, the government presented evidence of Dudley's alleged drug conduct. And on the third day, the government planned to put the serious-injury victim on the stand. Before the day got started, however, Dudley changed his mind—and opted to plead guilty. *See* R. 178; R. 179.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties presented the Court with a binding plea agreement.  R. 180.  Dudley agreed to plead to the serious-injury charge. *Id*. at 1.  In return, the government—notwithstanding Dudley's criminal history—stipulated to a sentence of twenty-five years. *Id*. at 3.

Before accepting the plea, the Court needed to make sure that Dudley meant it. *See* Fed. R. Crim. P. 11(b)(2).  As the jury waited outside, the Court and Dudley engaged in an extensive Rule 11 colloquy. *See* Fed. R. Crim. P. 11(b)(1).  The Court asked Dudley whether he understood the rights he was giving up, including the right to trial by jury.  He said yes. The Court asked whether he knew what he was pleading to.  He said yes.  The Court asked whether he was on drugs or had been coerced into pleading.  He said no.  And throughout, Dudley asked questions of his own, which the Court answered.  Satisfied that the agreement was knowing and voluntary, the Court accepted Dudley's binding plea. *See* R. 179.

Four days later, Dudley moved to withdraw it.  R. 183.  As grounds, he states that he was not really "speak[ing] his mind" at the colloquy because his lawyer had made it seem "like [he] had no choice but to sign the plea agreement or get life." *See* Dudley Letter at 2.[1]

---

[1] Dudley sent this letter to chambers through his girlfriend.  The Clerk of the Court will file the letter in the record as an addendum to Dudley's motion to withdraw his plea.  The Clerk will also file a letter from Dudley's mother, which reiterates the arguments Dudley makes in his own letter.

II.

When a defendant voluntarily says—in open court—that he is guilty of a crime, he "may not ordinarily" go back on that word. *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)). A plea bargain is a contract. *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990). Breaking that contract flaunts "the public interest in finality and the orderly administration of justice." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (quoting *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993)). A defendant therefore does not have an automatic right to withdraw his guilty plea. *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012).

The Court may permit a defendant to do so, however, if he can show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The burden rests on the defendant to persuade the Court to use its discretion in that way. *Martin*, 668 F.3d at 794. Seven factors help the Court determine whether it should: (1) the length of time between the plea and the motion to withdraw; (2) the reason for not moving to withdraw the plea sooner; (3) whether the defendant has maintained his innocence; (4) the circumstances underlying his plea; (5) his nature and background; (6) his prior experience with the criminal-justice system; and (7) the prejudice that granting the motion would cause the government. *Id.*; *see also United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994) (establishing these factors), *superseded by guidelines amendment on other grounds*, U.S.S.G. § 3B1.1. The list is non-exhaustive and no factor controls. *See United States v. Matthews*, 477 F. App'x 371, 373 (6th Cir. 2012). The importance of any given factor depends on the case. *See United States v. Triplett*, 828 F.2d 1195, 1197–98 (6th Cir. 1987).

3

III.

Here, Dudley moved promptly to withdraw his plea.  This is therefore not a situation where the defendant "wait[ed] several weeks" to decide whether he made a bad choice. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (per curiam) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)).  So the timing factors (numbers one and two) weigh in Dudley's favor.  But they do not weigh much.  The "case for withdrawal is weaker" when the defendant takes a plea deal even though he is already aware of the reason why he will later move to withdraw it.  *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987).  Dudley moves to withdraw his plea because, he says, his lawyer forced him to take the deal—a reason he would of course have known at the time he accepted it.

And even if the timing factors weigh slightly in Dudley's favor, they alone are not enough.  *See, e.g.*, *United States v. Weldon*, 541 F. Supp. 2d 890, 897–902 (E.D. Ky. 2006) (denying a motion to withdraw that the defendant brought four days after his plea), *aff'd*, 275 F. App'x 462 (6th Cir. 2008).  The Court must still consider the remaining factors.  Dudley does not assert his innocence of the crime he admitted committing.  Thus, factor three weighs against him.  *See id.* at 898–99.  He has some college education and overall was a more knowledgeable and involved defendant than most, often conferring with his attorney and suggesting lines of argument.  Indeed, the Court noted at his plea colloquy that he was very involved in his defense and was obviously an intelligent person.  Thus, factor five (his nature and background) weighs against him.  *See id.* at 901 (noting that "[t]his factor . . . favors denying [a] motion to withdraw" when the defendant has a better grasp over his case than "the prototypical defendant generally encountered in federal court").  And Dudley, with three

4

prior drug felonies, is a "veteran of the criminal justice system." *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996).  Thus, factor six weighs against him, too.

That brings the Court to factor four: the circumstances underlying the plea.  On paper, Dudley got a good deal.  Facing an already substantial amount of government evidence, he would have gone to jail for the rest of his life if convicted of the serious-injury charge.  And the government was poised to present its most important witness: the victim.  Yet at the last minute, the government agreed to call the whole thing off and settle for twenty-five years— not a small sentence, but still much lower than life.  Since Dudley is a relatively young man, that difference is meaningful.  "Last[-]minute decisions to pleads guilty are commonplace," and this one, all things considered, seems to have worked to Dudley's advantage.  *Weldon*, 541 F. Supp. 2d at 899.  That advantage alone moves this factor to the side of denying Dudley's motion.  *See United States v. Goodloe*, 393 F. App'x 250, 255–56 (6th Cir. 2010) (explaining that the circumstances underlying the plea favored denying the defendant's motion to withdraw "[g]iven the rather overwhelming evidence" against the defendant and the "negotiated concessions" that he obtained from the government).

But Dudley not only got a favorable plea deal—he also got time to think on it. Dudley asked his attorney about a plea deal the second night of trial.  *See* Dudley Letter at 1. His attorney came back with one in minutes.  *Id*.  Dudley decided to sleep on it.  *Id*.  The next morning, he had an extensive Rule 11 colloquy.  Only then, once the Court made sure his rights were quite clear, did Dudley offer—and the Court accept—his guilty plea.  *See Weldon*, 541 F. Supp. 2d at 899 (noting that a thorough colloquy weighs against vacating a

guilty plea). And at each stage, Dudley had a lawyer, Steven Howe, to guide him. *See Bazzi*, 94 F.3d at 1027 (weighing this fact against vacating a plea).

According to Dudley, however, Howe was the problem. The morning of his plea, Dudley apparently had some second thoughts—and shared those thoughts with his lawyer. Dudley Letter at 1. To which Howe apparently responded, "if you don't sign this plea agreement you're going to get life." *Id.* "[S]omething in [his] vo[ic]e," Dudley says, made Dudley feel "threatened"—like his only choice was either to sign the plea or else "finish trial with [a lawyer] who already thinks we lost." *Id*. at 2.

Presumably, Dudley intends to argue that Howe's conduct rendered the circumstances surrounding his plea so "[un]fair" or "[un]just" that the Court should let him withdraw it. Fed. R. Crim. P. 11(d)(2)(B). He offers two arguments to that effect. First, he argues that Howe coerced his plea—which, if true, would be a problem. The Court must ensure that defendants have entered their pleas voluntarily. *See Brady v. United States*, 397 U.S. 742, 748 (1970). It does so through a Rule 11 colloquy. *See United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005) (concluding that a "plea colloquy met the requirements" of Rule 11 and "[c]onsequently" that the plea was "knowing, voluntary, and intelligent"). As discussed, the Court engaged Dudley in a thorough colloquy, during which he assured the Court that his plea was voluntary. Dudley has not objected to that colloquy or identified any error within it that affected his "substantial rights." *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004); *see also* Fed. R. Crim. P. 11(h). Thus, the colloquy adequately ensured that Dudley's choice to cut short his trial was free and informed.

Colloquy aside, Dudley fails to show that Howe did, in fact, coerce him to plead. Certainly, as Dudley describes it, Howe's manner of giving advice seems rather direct—a good thing in most instances. But it was not coercive. Howe used no "force, threats, or promises (other than promises in [the] plea agreement)." Fed. R. Crim. P. 11(b)(2). That the case wasn't looking too good for him was probably not what Dudley wanted to hear. But it was not a threat. It was candid advice—something an attorney is obligated to give. The decision to plead was still Dudley's. And he made the decision of his own free will: The surrounding circumstances—including his lawyer's advice—enabled Dudley to consider his options and to choose whatever he thought was the most favorable one.

Second, Dudley argues that his decision to plead was the product of "ineffective counsel." Dudley Letter at 2. He seems to mean that "but for [Howe]'s errors, he would not have pleaded guilty." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). But to prove an ineffective-assistance claim, Dudley must first prove that his counsel was actually ineffective. *See id.* at 58. And even taking his account as true, Dudley has shown merely that Howe provided the advice that he (Howe) considered most realistic. Being realistic does not render counsel ineffective. *Cf. Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("[T]his Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."). Howe might have been ineffective had he *not* told Dudley the consequences of rejecting the plea. Advising a client about consequences is exactly what a lawyer is supposed to do. *See, e.g.*, *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) ("A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the

7

options available."). Dudley therefore has not shown that Howe was ineffective. And thus, the fourth factor also falls on the side of keeping Dudley's plea in place.

At best, then, the two timing factors weigh marginally in Dudley's favor. The rest of the factors weigh against—and they weigh more heavily in this case than they do in others. Dudley was more involved than the prototypical defendant and thus more aware of his odds; he engaged in an extensive plea colloquy; and he benefitted both from counsel who appears to have been vigilant and from a plea deal that appears, under the circumstances, favorable. With these factors pressing against him, Dudley fails to carry his burden. He can show no "fair and just reason" for withdrawing his plea. Fed. R. Crim. P. 11(d)(2)(B).

Even if he could, Dudley would run into the last factor: prejudice to the government. The Court need not consider this factor "unless and until the defendant has established a fair and just reason for vacating his plea"—in other words, unless his motion survives factors one through six. *Alexander*, 948 F.2d at 1004. Because Dudley has not "show[n] cause" for a withdrawal, the government "need not establish prejudice" here. *Martin*, 668 F.3d at 797.

Nevertheless, it has. Dudley chose to plead guilty after the government had presented a substantial amount of its evidence. Since then, the government has released the witnesses it had under subpoena. R. 188 at 7. Relocating those witnesses—if even possible—will prove difficult. Some gave self-incriminating testimony and may be unlikely to do so again; others might choose not to "snitch" twice. Forcing the government to re-corral witnesses, re-prepare its case, and present that case anew—that is the definition of prejudice. *See Martin*, 668 F.3d at 797. And here, that prejudice would serve little purpose. Dudley has seen the evidence that the government would present at his second trial. In the face of that evidence,

he thought it better to plead guilty.  The withdrawal rules protect defendants from pleading out of "hast[e]" or "confus[ion]," but they do not protect defendants from buyer's remorse. *Alexander*, 948 F.2d at 1004.  Dudley's plea did not arise from haste, confusion, or any other kind of duress.  And he cannot withdraw it now.

### IV.

Dudley also wants a new lawyer.  R. 183.  To accommodate that wish, Howe has moved to withdraw himself from the case.  R. 184.  Howe is Dudley's fourth lawyer and the second that the Court has appointed him.  Though the right to counsel is absolute, the right to one's "counsel of *choice*" is not.  *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Nevertheless, when a defendant asks to replace his court-appointed attorney, the Court "has a responsibility to determine the reasons for [his] dissatisfaction with his current counsel."  *Id*. (quoting LaFave & Israel, *Criminal Procedure* § 11.4, at 36 (1984)).  The defendant must offer the Court "good cause" to replace his lawyer.  *United States v. Sullivan*, 431 F.3d 976, 979–80 (6th Cir. 2005).  Maybe a "conflict of interest" has developed between them, or "a complete breakdown in communication," or some other sort of "irreconcilable conflict."  *Id*. The Court must investigate whether the alleged problem would prevent the defense team from adequately presenting its case.  *Iles*, 906 F.2d at 1130 n.8.  And the Court must balance that possibility against "the public's interest in the prompt and efficient administration of justice."  *Id*. (quoting *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985)).

Dudley is dissatisfied because he believes that Howe was ineffective and forced him to act against his own interests.  Dudley Letter at 1–2.  For that dissatisfaction to rise to the level of "good cause," however, Dudley must show that he and Howe can no longer work

together.  *See Sullivan*, 431 F.3d at 979–80.  He fails to do so.  As explained above, Howe has provided Dudley with effective assistance until now.  And even now, Howe continues to comply with Dudley's wishes.  Though he apparently thinks withdrawing the plea would be an act of self-immolation, he offered to cease representing Dudley so that Dudley could examine him as a witness at any hearings on the motion.  R. 184.  Plus, Dudley and Howe have just one more thing to accomplish together: to prepare for a sentencing hearing—where the length of the sentence has already been determined.  *See* R. 180 at 3.  Their relationship does not seem so frayed that they could not undertake that relatively simple task together, nor is there any reason to doubt that Howe will continue to respect Dudley's wishes while also dispensing sound advice.  At the same time, the public interest in "prompt" and "efficient" justice weighs against substituting yet another lawyer who will probably need extra time to get up to speed on this case.  *Wilson*, 761 F.2d at 280.  As such, the Court must deny this request as well.

V.

Finally, Dudley—and Howe on Dudley's behalf—request an evidentiary hearing on the above issues.  R. 183; R. 189.  Although defendants do not receive such hearings "as a matter of right," a court may nevertheless conduct one "to ensure that it has the information necessary" to rule on a defendant's motion to withdraw his plea.  *Martin*, 668 F.3d at 795 (quoting *United States v. Woods*, 554 F.3d 611, 613 (6th Cir. 2009)).

But here no hearing is necessary.  The heart of Dudley's claim is evident from his motion and his letter—namely, that Howe threatened him and provided ineffective counsel.  Under the law surveyed above—and Dudley's own account of the events—it is already clear

that he is not entitled to withdraw the plea.  Given the number and weight of the factors lined up against allowing Dudley to withdraw his plea, any further account that Dudley might provide about the circumstances surrounding the plea will not change the result.  The Court therefore need not hold an evidentiary hearing.

*      *      *

Accordingly, it is **ORDERED** as follows:

(1)     Dudley's motion to withdraw his guilty plea, to replace his attorney, and to conduct an evidentiary hearing, R. 183, is **DENIED**.

(2)     Howe's motion to withdraw as counsel, R. 184, is **DENIED**.

(3)     Howe's request for an evidentiary hearing, R. 189, is **DENIED**.

(4)     The Clerk of the Court **shall docket** the attached letters from Antoine Dudley and Donna Clark as addenda to Dudley's motion to withdraw his plea, R. 183.

This the 16th day of November, 2016.



Signed By:

_Amul R. Thapar_ AT

United States District Judge